IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL GRANGE MUTUAL INSURANCE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO.  06-3174 |
| v. | : | |
| | : | |
| CRS AUTO PARTS, INC., | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                               November 16, 2007

The parties are aware of the background of this case and only facts necessary to this court's conclusion that the binder was in effect and provided coverage at the time of the accident are set forth as follows:

**I.  FINDINGS OF FACT**

1. With respect to the insurance CRS was attempting to obtain, Givnish contacted Schaible sometime in May or June of 2003.  (N.T. at 22, 106).

2. Givnish provided Schaible with all the documents he asked for; namely, vehicle lists, driver's lists, lost run documents, the latter of which went back a couple of years, including the prior year with Meridian/State Auto.  (N.T. at 22, 23).

3. Schaible referred Givnish to Turley and "got the stuff (Givnish gave him) all over to the Turley Agency."  (N.T. at 107).

4. Turley had been contacted by Schaible in the latter part of May or early June of 2003 and asked if he was interested in CRS and said he was.  (N.T. at 114).

5. Schaible sent him copies of the policy information and loss information that CRS had provided him. (N.T. at 115).

6. Prior to July 1, 2003, Turley spoke directly with Givnish several times and agreed to coverage as ultimately set forth in the binder (D-1) (N.T. at 116,117).

7. Givnish picked up the binder (D-1) and insurance cards at the Turley Agency on June 30th (2003) at around 6:00 p.m. (N.T. 40, 41. *See* also Turley testimony, N.T. at 117, 118).

8. All of the accurate loss information needed by National Grange to do the proper underwriting for these policies was provided to Turley and in his file prior to June 30, 2003. Turley did not feel that there was any information lacking to make a decision regarding coverage for CRS. (Trial Transcript, pg. 147, lines 1-22; pg. 114, line 25; pg. 116, lines 10-17 and 20; pg. 108, line 6.)

9. Turley had authority to bind National Grange to provide coverages. This authority was granted by National Grange in their Agency Agreement. (See Agency Agreement, Exhibit "Turley 1", Trial Transcript pg. 125, line 22; Turley Deposition, pg. 109, line 13 and pg. 125, lines 8-13).

10. Prior to issuing the binder for CRS, Turley had issued binders for National Grange, was never advised that he did not have authority to bind National Grange and National Grange had never declined coverage after he bound it. (Turley Deposition, pg. 110, lines 3-13; pg. 118, lines 11-15).

11. There is no credible evidence that CRS, at any time prior to the binder being issued or prior to the accident of July 10, 2003, made any misrepresentations to National Grange or Turley Agency.

12. Even after the accident, there is no evidence that CRS made any misrepresentation, material or otherwise. National Grange's effort to characterize the misrepresentations as somehow being made by CRS is misleading. While Lindsay admits (N.T. at 83) that the blank CRS application he signed after July 10, 2003 later contained misrepresentations, there is no evidence that these misrepresentations were based upon any act of commission or one of knowing omission by him or anyone at CRS.

Thus, as a fact finder alone, the court does not address the legal significance of signing a substantially blank application as was done here by CRS. In light of its finding relative to the issuance of the binder, there is no need to do so.

## II. CONCLUSIONS OF LAW

Both parties cite Klopp v. Keystone Ins. Companies, 528 Pa. 1, 595 A.2d 1 (1991) for the right of the insurer to rescind policies as void *ab initio* where an application contained a material misrepresentation.

However, this case involves a loss, which, based on the facts I have found, occurred when a valid binder was in effect.

As stated in Klopp, *supra*, FN 5:

> It is the custom of the insurance industry, and sound public policy, to provide on-the-spot temporary insurance coverage in the form of a binder until the application information can be verified and a formal policy issued.

That is precisely what happened in this case, and not only were no misrepresentations made in connection with issuance of the binder, but also no pertinent information was withheld from Turley prior to the binder being issued.

Thus, the binder was in effect and provided coverage at the time of the accident.

Based on the foregoing, judgment is entered in favor of defendant CRS Auto Parts, Inc. and against plaintiff National Grange Mutual Insurance on the issue of coverage.

In a submission sent to the court by letter dated November 6, 2007, National Grange argues that the court should open the record to permit the original application as opposed to a copy into the record. Even were the court to entertain this patently late submission, it would not alter the findings of fact in any way. Simply stated, National Grange had all pertinent information when it issued the binder through Turley and which Givnish picked up on June 30, 2003. That binder was in effect on July 10, 2003, the date of the accident.

IT IS SO ORDERED this 16th day of November, 2007.

This case is marked CLOSED.

BY THE COURT:

 *s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S. J.